[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name was Kathleen A. Madden, and the defendant were married at Ridgefield, Connecticut on October 5, 1991. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage and no minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance. The court finds the following additional facts.
When the parties were married, the plaintiff was attending Western Connecticut State University studying for a bachelor degree in justice and law administration. She received that degree in 1993. The parties separated on October 28, 1994. While attending college to obtain her bachelor's degree, she was employed by the Federal Bureau of Prisons in Danbury, Connecticut, on a full-time basis. The plaintiff commenced studying for her master's degree in September of 1994 but has not completed any courses. She had approximately one-half of her credits towards her bachelor's degree at the time the parties married. Her mother paid for her college education in full.
During the period of time that the parties were married, the defendant was employed full-time, five days a week, working from CT Page 13439 8:00 a.m. to 6:00 p.m. and also worked on Saturdays. The defendant enrolled in college in July of 1994. The plaintiff encouraged him to start college. The defendant terminated his employment when he enrolled in college. He has been employed on a part-time basis since that date. The defendant is presently employed by Mike Weber doing construction work, building homes and additions. The defendant is in fine health except that he has varicose veins in his left leg. He also has had two vertebrae cracked in his lower back. The defendant is twenty-nine (29) years old. He completed approximately ten credits toward his undergraduate degree in the fall of 1994, and approximately ten credits in the spring of 1995.
The plaintiff's present occupation is as a case manager for the Federal Bureau of Prisons. Her gross weekly income is $721.20, and her net weekly income is $490.02. She has liabilities totalling $4,200. The plaintiff owns a 1992 Toyota pick-up truck with a total value of $12,000, and a loan balance of $7,165, and an equity of $4,835. The defendant operates that motor vehicle. She also has a Honda Accord that is leased. The defendant has signed that lease agreement. The lease expires in November of 1996. The plaintiff has $629 in bank accounts. She has deferred compensation plans with her employer consisting of a benefit plan with a value of $1,403, and a Thrift Savings Plan with a value of $2,778. Almost all of those benefits were accumulated during the time the parties were married. The plaintiff commenced employment with the Bureau of Prisons on July 28, 1991, and the parties were married on October 5, 1991. From the net proceeds of her injury case of $31,777.38, there is presently remaining $23,432, which the plaintiff placed in the name of her mother and is being held by her mother. Her mother testified that those funds are being held for the court to determine how they should be divided. Those funds had been in a joint savings account and were withdrawn by the plaintiff and transferred into her mother's name prior to the time the divorce papers were served on the defendant. Some of the funds received from the settlement were used to purchase furniture that the parties are now in dispute as to the division of the furniture. The plaintiff's financial affidavit shows, under weekly expenses, food for $75 and dinner meals for $75. That $150 total is hereby reduced to $75 per week.
When the parties separated, the defendant had approximately $7,100 in his checking account that came from the proceeds of the sale of the condominium. The defendant's financial affidavit CT Page 13440 shows a weekly expense for rent or mortgage of $50. He is presently residing with his mother and does not pay any rent to her. His financial affidavit also shows a weekly telephone expense of $10. He is not paying that expense.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
When the parties were married, the plaintiff had approximately $8,000. The parties purchased a condominium prior to the date they were married with title being placed in both names. The source of funds for the condominium consisted of bonds and savings owned by the plaintiff with a total value of approximately $8,000; $5,000 received from the plaintiff's mother; $5,000 received from the defendant's family; funds from engagement gifts and some joint funds. The condominium cost was $120,000, and was financed with a $100,000 mortgage. The parties sold the condominium on October 28, 1994 for a total sale price of $119,250. After paying the first mortgage, real estate taxes and other usual closing expenses, the parties netted $12,879.18 from the sale. In November, 1994, the plaintiff turned over to the defendant approximately $7,000 of the $12,879.18 and kept the balance of approximately $5,900 for herself.
When the parties married, the defendant had approximately $1,000 in assets, and he also had various credit card liabilities.
The plaintiff was involved in a motor vehicle accident approximately one month after the parties married. Her injuries included a rupture of the L4-5 intervertebral disc. She has a seven percent disability as regards the lumbar spine. She will never be "normal" and will, in all probability, be subject to bouts of recurring low back pain associated with strenuous activities. She settled her uninsured/underinsured motorist claim as a result of that motor vehicle accident on November 30, 1993, for a gross settlement of $50,000. After deducting attorney's fees and other disbursements, she received a net of $31,677.38, plus an additional $100 to be reimbursed to her from one of her treating physicians. Between December of 1993 and January of 1994, $1,823.79 of the settlement was used to pay off one credit card of the defendant, and an additional $2,502.24 was used to pay off a second credit card of the defendant. These were credit CT Page 13441 cards that he had at the time the parties married. During the period of time the parties were married, approximately $200 per month in monthly payments were made until December, 1993 on credit card liabilities of the defendant that existed at the time of the marriage, consisting of approximately $2,600 on his VISA credit card and $300 to $400 on his Mastercard credit card. In December, 1993, $1,200 was withdrawn from the parties' funds to purchase a diamond ring for the plaintiff. In February of 1994, $2,600 was withdrawn for the parties to go on vacation to Jamaica and Cancun. In March of 1994, $500 was withdrawn for vacation spending money for the parties. In September of 1994, $1,100 was withdrawn to repay the plaintiff's mother regarding college expenses for the plaintiff. On September 28, 1994, $500 was withdrawn to purchase a washer and dryer that are presently in the possession of the defendant. On October 21, 1994, $2,000 was withdrawn which was used by the plaintiff to pay her first and last month's rent. On November 2, 1994, $125 was withdrawn after the parties separated, and was used by the defendant for personal expenses. On February 22, 1994, approximately $1,400 was deposited into the joint account from an income tax refund.
When the plaintiff and the defendant separated, the defendant took various items of furniture and personal property from the family residence. The plaintiff seeks to have the defendant turn over to her the following:
A. Green couch and love seat. This was purchased from funds from her in jury settlement.
B. Television and television cart. This was purchased from funds from her injury settlement.
C. CD player and CDs. The defendant testified that he agreed that the plaintiff should have the CD player.
D. Christmas ornaments. Some of those ornaments came from a previous employer of the plaintiff and some were from her mother. The defendant testified that the plaintiff could have the Christmas ornaments.
E. Address book.
F. Photo albums. The defendant testified that the plaintiff could have the photo albums. CT Page 13442
G. One-half of the luggage consisting of a total of 6-8 pieces. The luggage were gifts from the defendant's cousin. It is the defendant's position that since the luggage came from his family, he should retain all of it.
H. Gas grill. This was a gift from a neighbor.
I. Car phone. The car phone was given to the defendant by the plaintiff.
J. Washer.
K. Dryer.
The plaintiff made a gift to the defendant of a nine millimeter Smith and Wesson weapon that is still in her name. She is in agreement that the defendant should retain that weapon but only on condition that he transfer title into his name within thirty (30) days, otherwise, she wishes to have it returned to her.
The parties are in dispute regarding the payment of attorney's fees. The plaintiff paid a $3,500 retainer plus an additional approximately $150. No credible testimony was presented as to the present balance due on her legal fees. The $3,500 came from the approximate $5,900 that she retained from the sale of the jointly owned condominium. The defendant paid a $2,000 retainer to his attorney and now owes a balance of approximately $4,000.
The court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders:
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY CT Page 13443
1. No alimony is awarded in favor of either party.
C. BY WAY OF PROPERTY ORDERS
1. All liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff and she is to hold the defendant harmless therefrom.
2. The Plaintiff is to transfer to the defendant all of her right, title and interest in the 1992 Toyota. The defendant is to pay the loan balance and hold the plaintiff harmless therefrom.
3. The plaintiff is to pay the lease payments on the 1992 Honda Accord and hold the defendant harmless therefrom.
4. All bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
5. All deferred compensation plans shown on the plaintiff's financial affidavit are awarded to the plaintiff.
6. All household furnishings in the possession of the plaintiff are awarded to the plaintiff. In addition, the plaintiff is awarded the following items that are presently in the possession of the defendant:
(a) Green couch and love seat.
(b) Television and television cart.
(c) CD player and CDs.
(d) Christmas ornaments.
(e) Address book.
(f) Photo albums.
The defendant is to cooperate in allowing the plaintiff to take possession of the above items.
7. The CD held at the Ridgefield Bank in the name of the plaintiff's mother is ordered divided as follows: CT Page 13444
 (a) $2000 of that account is assigned to the defendant and the balance of that account is assigned to the plaintiff.
8. All of the plaintiff's right, title and interest in the nine millimeter Smith and Wesson pistol is transferred to the defendant, but only on condition that he register the pistol in his name within thirty (30) days from today's date. The plaintiff is ordered to cooperate in completing the registration of the pistol into the defendant's name. In the event that that has not been accomplished, and proof thereof furnished to the plaintiff, in writing, within thirty (30) days, then he is ordered to return the pistol to the defendant by January 3, 1996 to be her property to be disposed of as she sees fit.
9. All liabilities shown on the defendant's financial affidavit are to be paid by the defendant and he is to hold the plaintiff harmless therefrom.
10. All bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. The plaintiff is restored her maiden name of Kathleen A. Madden.
2. Counsel for the plaintiff is ordered to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for enter and filing.
Axelrod, J.